IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

FILED BY _____ D.C.

NOV 01 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. DAVID REED<br><br>*Plaintiffs,*<br><br>v.<br><br>RICK CASE ENTERPRISES, INC.<br><br>Address:<br>14500 W. Sunrise Blvd.<br>Sunrise, FL 33323<br><br>Registered Agent:<br>Rita M. Case<br>14500 W. Sunrise Blvd.<br>Sunrise, FL 33323<br><br>*Defendant.* | Civil Action No. _____<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. §§ 3729** *et seq.*<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY DEMAND** |

## COMPLAINT

### INTRODUCTION

1. *Qui tam* Relator David Reed ("Reed"), by and through undersigned counsel, individually and on behalf of the United States of America, files this Complaint against Rick Case Enterprises, Inc. ("Rick Case Enterprises") to recover damages, penalties, and attorneys' fees and costs for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA").

2. Rick Case Enterprises is a management company that oversees the Rick Case Automotive Group, which comprises at least twenty-one associated business entities and collectively employs over 1,136 employees.

1

3. In 2020, eleven business entities associated with the Rick Case Automotive Group, including Rick Case Enterprises, received loans under the Paycheck Protection Program (PPP). These loans totaled $14,305,100 and were forgiven for a total of $14,471,876.57.

4. Relator believes that ten of Rick Case Automotive Group's associated entities have valid franchise agreements with franchisors listed on the Small Business Administration's (SBA's) franchise list. For purposes of the PPP loan, this means that only the employees of that individual franchisee are counted when determining the entity's eligibility for a PPP loan.

5. However, for one of the entities, Rick Case Enterprises, Relator believes there is no valid franchise agreement in place, meaning all employees of all Rick Case Automotive Group affiliated entities must be aggregated for determining Rick Case Enterprises' PPP eligibility.

6. Additionally, all revenue for all Rick Case Automotive Group affiliated entities must be aggregated for determining Rick Case Enterprises' PPP eligibility under SBA's alternative size standard.

7. Defendant Rick Case Enterprises received a PPP loan for $465,300, claiming 29 employees. The loan was ultimately forgiven for $470,728.50.

8. The U.S. government also paid a $13,959 processing fee to Comerica Bank for processing Rick case Enterprises' PPP loan.

9. Because Rick Case Enterprises was ineligible to receive PPP loans, yet falsely certified to the U.S. government that it was eligible to receive a PPP loan and falsely certified that it was eligible for loan forgiveness, these false statements led to the submission and payment of false claims for payment to the U.S. government.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this action arises under the False Claims Act as amended at 31 U.S.C. §§ 3729–3733.

11. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3729(a) because Defendant is domiciled within this judicial district.

12. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. §§ 1391 and 1395(a) because Defendant is domiciled within this judicial district.

13. This action is not based on public disclosure.

14. Pursuant to 31 U.S.C. § 3730(b)(2), Relator has provided the Government with a copy of this Complaint and a written disclosure of substantially all material, evidence, and information in his possession.

## THE PARTIES

### *Relator David Reed*

15. Relator David Reed is a resident of Cary, North Carolina.

16. Reed worked in the field of information technology prior to his retirement in 2019.

### *Defendant Rick Case Enterprises*

17. Rick Case Enterprises is a domestic Florida corporation that was formed in March 1986.

18. Rick Case Enterprises is the management company that oversees Rick Case Automotive Group.

3

19. Rick Case Automotive Group is headquartered at 14500 West Sunrise Blvd. in Sunrise, FL.

20. Rita Case owns and operates Rick Case Automotive Group and serves as its president and CEO.

21. Rick Case Automotive Group has twenty-one business locations, including thirteen in Florida and seven in Georgia. All Rick Case Automotive Group entities listed below are also owned and operated by Rita Case.

   a. Rick Case Honda (Davie, Florida)

   b. Rick Case Honda Powerhouse (Davie, Florida)

   c. Rick Case E-Z-GO (Davie, Florida)

   d. Rick Case Hyundai (Davie, Florida)

   e. Rick Case Genesis Davie (Davie, Florida)

   f. Rick Case FIAT (Davie, Florida)

   g. Rick Case Alfa Romero (Davie, Florida)

   h. Rick Case Maserati (Davie, Florida)

   i. Rick Case Volkswagen (Davie, Florida)

   j. Rick Case Hyundai (Ft. Lauderdale, Florida)

   k. Rick Case Genesis (Ft. Lauderdale, Florida)

   l. Rick Case Acura (Ft. Lauderdale, Florida)

   m. Rick Case Kia (Sunrise, Florida)

   n. Rick Case Hyundai (Duluth, GA)

   o. Genesis of Gwinnett (Duluth, GA)

   p. Rick Case Mazda (Duluth, GA)

    q. Audi Gwinnett (Duluth, GA)

    r. Rick Case Kia (Duluth, GA)

    s. Rick Case Hyundai (Roswell, GA)

    t. Genesis of Roswell (Roswell, GA)

22. According to PPP loan application data, the eleven entities associated with Rick Case Automotive Group that applied for and received PPP loans in 2020 have a combined total of approximately 1,136 employees.

23. Rick Case Automotive Group entities generated a total of approximately $1.2 billion in revenue in 2020.[1]

## OVERVIEW OF APPLICABLE LAWS, RULES, AND REGULATIONS

*The Paycheck Protection Program*

24. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a law intended to address the economic fallout of the COVID-19 pandemic in the United States.

25. The CARES Act resulted in, *inter alia*, the Paycheck Protection Program. Coronavirus Aid, Relief, and Economic Security Act, No. 116-136 (March 27, 2020).

26. The PPP is a loan program designed to provide eligible businesses with low-interest rate loans guaranteed by the Small Business Administration (SBA) with support from the Department of the Treasury.

27. Businesses seeking a PPP loan can apply through any existing SBA 7(a) lender, through a federally insured depository institution or credit union, or through a participating Farm Credit System institution.

---

[1] "Top 150 dealership groups based in the U.S.," https://s3-prod.autonews.com/2021-12/2020-Top-150-Dealership-Groups.pdf.

28. The foregoing private institutions approve and authorize PPP loans and are subsequently reimbursed by the federal government.

29. For its work to process the application and fund the loan, the SBA pays the lender a processing fee based on the size of the loan funded by the lender. SBA will pay lenders fees for processing PPP loans in the following amounts:

    a. Five (5) percent for loans of not more than $350,000;

    b. Three (3) percent for loans of more than $350,000 and less than $2,000,000; and

    c. One (1) percent for loans of at least $2,000,000.

*SBA Procedural Notice*, SMALL BUS. ADMIN., https://www.sba.gov/sites/sbagov/files/2021-03/5000-20036-508.pdf.

30. The PPP program provides small businesses with funds to pay up to 24 weeks of payroll costs including benefits.

31. The PPP is similar to existing SBA Loan Programs. However, the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere, as defined in the Small Business Act. 15 U.S.C. § 632(h).

32. The PPP section of the CARES Act expanded eligibility for SBA loans beyond the limitations of the Small Business Act. 15 U.S.C. §§ 632, 636.

33. The following entities affected by Coronavirus (COVID-19) may be eligible:

    a. Any small business concern that meets SBA's size standards (either the industry-based size standard or the alternative size standard);

    b. Any business, 501(c)(3) non-profit organization, 501(c)(19) veterans' organization, or Tribal business concern (sec. 31(b)(2)(C) of the Small Business Act) with the greater of:
        i. 500 employees, or
        ii. That meets the SBA industry size standard if more than 500, or
        iii. Any business with a [North American Industry Classification System ("NAICS")] Code that begins with 72 (Accommodations

    and Food Services) that has more than one physical location and employs less than 500 per location;

   c. Sole proprietors, independent contractors, and self-employed persons.

34. The size of a business concern is determined under the SBA's size standards as they apply to the "concern whose size is at issue and **all of its domestic and foreign affiliates**." 13 C.F.R. § 121.301(f)(6) (emphasis added).

35. Entities that apply for a PPP loan submit their Borrower Application Form to a federally insured depository institution, federally insured credit union, or a Farm Credit System ("Lender") which processes the loan application and funds the loan.

36. The SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

37. For its work to process the application and fund the loan, the SBA pays the Lender a processing fee based on the size of the loan funded by the Lender. SBA will pay lender fees for processing First Draw PPP loans in the following amounts: Five (5) percent for loans of not more than $350,000; Three (3) percent for loans of more than $350,000 and less than $2,000,000; and One (1) percent for loans of at least $2,000,000. 15 U.S.C. § 636(a)(36)(P).

38. To be eligible for loan forgiveness, borrowers must complete SBA Form 3508 or SBA Form 3508EZ to calculate eligible payroll and nonpayroll costs.

39. Borrowers must certify that the dollar amount for which forgiveness is requested:

   a. Was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
   b. Includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
   c. Includes payroll costs equal to at least 60% of the forgiveness amount; and

    d. Does not exceed eight weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual or, if a 24-week covered period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual.

*SBA Form 3508 "Paycheck Protection Program Loan Forgiveness Application"* (June 2020).

40. Additionally, borrowers must certify that:

    a. They have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments; and

    b. The information provided in the application and the information provided in all supporting documents and forms is true and correct in all material respects.

*Id.*

41. An entity can also be eligible for a PPP loan as a small business concern if it meets both tests of SBA's "alternative size standard" as of March 27, 2020:

    a. The maximum tangible net worth of the business is not more than $15 million; and

    b. The average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

SMALL BUS. ADMIN, *"Paycheck Protection Program Loans Frequently Asked Questions (FAQs)"* (June 25, 2020).

***SBA Exceptions and Limitations on Affiliation and Loan Eligibility***

42. SBA Form 2483, which all applicants must submit to be considered for a PPP loan, requires an indication of Yes or No to the question: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other

business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A." SBA Form 2483, "Paycheck Protection Program Borrower Application Form" (April 2020).

43. Agency guidance specified that "applicants in SBA's Business Loan Programs (which include the PPP) are subject to the affiliation rule contained in 13 CFR § 121.301." SBA Interim Final Rule "Business Loan Program Temporary Changes; Paycheck Protection Program." 85 Fed. Reg. 20,819 (April 15, 2020).

44. Entities that have the power to control one another are affiliates of one another. Entities that are controlled by the same third party are also affiliates of each other as well as of the third party. 13 C.F.R. § 121.301(f).

45. Entities are also considered affiliates of one another if a principal of an entity controls the management of another. Affiliation between entities also arises if a single individual controls the management or Board of Directors of those entities. 13 C.F.R. § 121.301(f)(3).

46. The CARES Act waived the § 121.103 affiliation provisions for a limited category of business concerns: businesses in the Accommodation and Food Services sector as determined by their North American Industry Classification System (NAICS) code; businesses operating as a franchise that are listed in the SBA's Franchise Directory; and businesses receiving financial assistance from a licensed Small Business Investment Company (SBIC). 15 U.S.C. §636(a)(36)(D)(iv).

47. On the First Draw PPP Loan Borrower Application Form, the Applicant must indicate yes or no if it is a franchise that is listed in the SBA's Franchise Directory. The Applicant is not required to list the Franchise Identified Code issued by the SBA on this form. SBA Form 2483, "Paycheck Protection Program Borrower Application Form" (April 2020).

48. If a business knowingly makes false certifications on the PPP loan application and receives a PPP loan, then the business is in violation of the False Claims Act.

49. If a business that receives a PPP loan, subsequently submits a loan forgiveness application, and knowingly makes false certifications on the loan forgiveness application, then the business is in violation of the False Claims Act.

50. At all times herein mentioned, Defendant had knowledge of the public policies expressed in the guidelines herein mentioned, and of the fact that it must comply with all applicable SBA guidelines in order to receive a PPP loan and to apply for full forgiveness of a PPP loan.

***The Federal False Claims Act***

51. The FCA, 31 U.S.C. § 3729(a)(1)(A), makes knowingly presenting or causing to be presented to the United States any false or fraudulent claim for payment a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and the appropriate civil monetary penalty.

52. The FCA, 31 U.S.C. § 3729(a)(1)(B), makes knowingly making, using, or causing to be used or made, a false record or statement to get a false or fraudulent claim paid or approved by the government a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and the appropriate civil monetary penalty.

53. The False Claims Act also imposes liability for knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government. 31 U.S.C. § 3729(a)(1)(G).

54. The term "knowingly" as used in the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. *Id.* § 3729(b). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

## FACTUAL ALLEGATIONS

55. As outlined above, an entity was eligible for a first draw PPP loan if it met one of the three criteria to be a small business by: (1) having fewer than 500 employees; (2) meeting the SBA industry size standard if the entity had more than 500 employees; or (3) having a NAICS Code that begins with 72.

56. An entity was also eligible for a first draw PPP loan if, as of March 27, 2020, it met the alternative size standard, defined as: (1) the maximum tangible net worth of the business was not more than $15 million; and (2) the average net income after federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application was not more than $5 million.

57. Entities had to aggregate, consider, and report the total number of employees and revenue for all affiliated domestic and foreign entities to determine small business eligibility for the PPP. Entities that had valid franchise agreements did not have to aggregate, consider, and report the total number of employees and revenue for all affiliated entities on their PPP applications.

58. Entities are considered affiliates if they: (1) have the power to control one another; (2) are controlled by the same third party; or (3) if a principal of an entity controls the management of another.

11

59. Entities are also considered affiliates if a single individual controls the management or Board of Directors of those entities.

60. Rick Case Automotive Group and its associated business entities received multiple first draw PPP loans in 2020.

61. All Rick Case Automotive Group entities, including all dealership locations as well as the management entity Rick Case Enterprises, are affiliates of one another because Rita Case, the President and CEO of Rick Case Automotive Group, controls the management of all entities affiliated with Rick Case Automotive Group.

62. Although eleven entities affiliated with Rick Case Automotive Group received PPP loans, Relator believes that ten of these entities had valid franchise agreements which would exempt them from the affiliate rules of the PPP.

63. On April 8, 2020, Rick Case Enterprises received a PPP loan for $465,300 from Comerica Bank.

64. For funding Rick Case Enterprises' PPP loan, Comerica Bank received a three percent processing fee from the SBA which totaled $13,959.

65. Rick Case Enterprises' PPP loan was forgiven on June 11, 2021, in the amount of $470,728.50.

66. Relator understands that Rick Case Enterprises is a management entity that does not sell cars and does not have a dealership license or a franchise agreement.

67. Therefore, the employees for *all* affiliated Rick Case Automotive Group entities must be counted to determine whether Rick Case Enterprises was eligible to receive a PPP loan.

68. In April 2020, Rick Case Enterprises reported that it had 29 employees on its PPP loan application.

69. In 2020, eleven entities associated with Rick Case Automotive Group, including Rick Case Enterprises, received PPP loans. If the employee counts on each of these entities' 2020 PPP loan applications are to be believed, the eleven Rick Case Automotive Group entities that received PPP loans in 2020 reported a total of 1,136 employees. This does not consider or include the ten other Rick Case Automotive Group entities that did not receive PPP loans.

70. Because these entities are all affiliates of Rick Case Automotive Group, Rick Case Enterprises should have reported over 1,136 employees on its PPP loan application.

71. Due to the number of employees of all affiliated entities, Rick Case Enterprises was ineligible to receive its PPP loan and was therefore ineligible to receive forgiveness of its PPP loan.

72. Rick Case Enterprises was also ineligible to receive its PPP loan and to receive forgiveness of its PPP loan because all Rick Case Automotive Group entities collectively generated over $1.2 billion in revenue in 2020, making Rick Case Enterprises and its affiliates too large in terms of revenue to be eligible to receive PPP loans.

**COUNT I**
**Violation of The False Claims Act**
**31 U.S.C. § 3729(a)(1)(A)**
**Knowingly Submitting False Claims for Payment**

73. Relator incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

74. The False Claims Act imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

75. Defendants submitted a false claim for payment to the United States government by certifying on SBA Form 2483 that Rick Case Enterprises had under the requisite number of

employees to be eligible for the PPP loan even when the employees of all affiliated entities were counted. In reliance on these statements, Comerica Bank submitted claims to the U.S. government which resulted in the government paying Comerica Bank processing fees that totaled $13,959.

76. Had the government known that Rick Case Enterprises and its affiliated entities had over 500 employees, it would not have issued the PPP loan and granted loan forgiveness.

77. Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

78. The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

79. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

**COUNT II**
**Violation of The False Claims Act**
**31 U.S.C. § 3729(a)(1)(B)**
**Knowingly Making False Records and Statements Material to a False Claim**

80. Relator incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

81. The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim submitted to get a false or fraudulent claim paid or approved by the United States government. 31 U.S.C. § 3729(a)(1)(B).

82. Defendant made false statements that were material to false claims for payment by submitting a PPP loan application to Comerica Bank certifying that Defendant was eligible to

receive a PPP loan. In reliance on these false statements, Comerica Bank submitted claims to the U.S. government which resulted in the government paying Comerica Bank processing fees that totaled $13,959.

83. Had the government known that Rick Case Enterprises and its affiliated entities had over 500 employees, it would not have issued the PPP loan, granted loan forgiveness, or paid Comerica Bank the processing fee associated with the loan.

84. Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

85. The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

86. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

**COUNT III**
**Violation of The False Claims Act**
**31 U.S.C. § 3729(a)(1)(G)**
**Knowingly Concealing or Improperly Avoiding or Decreasing an Obligation to Pay or Transmit Money or Property to the Government**

87. Relator incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

88. The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

89. Defendant concealed its ineligibility for the PPP loan by submitting an application to the U.S. government which stated that Defendant used all PPP monies in accordance with the rules and regulations and requested forgiveness of the full PPP loan and interest. In submitting these false statements, Defendant sought to reduce or eliminate its obligation to repay the full amount of the dispersed PPP loan with interest.

90. Had the government known that Defendant was ineligible to receive the PPP loan in the first place, it would have required Defendant to repay the dispersed PPP loan with interest.

91. Defendant knew or should have known that in order to be eligible to receive a PPP loan and have the loan forgiven, it needed to have fewer than 500 employees among all affiliated entities.

92. The United States of America has been damaged by the aforementioned misrepresentations in an amount to be determined at trial.

93. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

## PRAYER FOR RELIEF

Wherefore, Relator Reed, acting on behalf and in the name of the United States of America and on his own behalf, prays that judgment will be entered against Defendant, for violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (G) as follows:

a. This Court enter judgment against Defendant in an amount equal to three (3) times the amount of damages the United States Government has sustained because of the Defendant's actions plus the maximum civil penalties for each act in violation of 31 U.S.C. § 3729;

b. In favor of Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorneys' fees, and costs incurred by Relator;

c. That, in the event the United States Government elects to intervene in and proceed with this action, Relator be awarded between 15% and 25% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

d. That, in the event that the United States Government does not proceed with this action, Relator be awarded between 25% and 30% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(2);

e. That, pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any alternate remedy that the United States Government elects to pursue;

f. For all costs of the civil action;

g. That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought in this Complaint;

h. That the United States and the Relator be awarded prejudgment and post judgment interest;

i. In favor of Relator and the United States for further relief as this Court deems to be just and equitable; and

j. Such other relief as this Court deems appropriate.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a jury trial.

Dated: October 30, 2024                                Respectfully submitted,

*/s/ Scott Oswald*

R. Scott Oswald, Esq. (FL Bar No. 158437)
Janel Quinn, Esq. (to be admitted *pro hac vice*)
The Employment Law Group, P.C.
1717 K St. NW, Suite 1110
Washington, DC 20006
202-261-2806
soswald@employmentlawgroup.com
jquinn@employmentlawgroup.com

*Counsel for Qui Tam Relator*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL],<br><br>*Plaintiffs,*<br><br>v.<br><br>[UNDER SEAL],<br><br>*Defendant.* | Civil Action No. _____<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. §§ 3729** *et seq.*<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY DEMAND** |